Please be seated. It's the time and place for argument in Planned Parenthood against Wasden. Are both sides ready? Okay. You may argue. I take it we're here about severability. Is that the focus of your argument? Yes, sir. Okay. Go ahead. Good morning, and may it please the Court. My name is Jeremy Chu, Deputy Attorney General for the State of Idaho, representing Defendants Lawrence, Attorney General Lawrence Wasden, and Ada County Prosecutor Craig Bauer in these proceedings. This is the second time that I've stood in front of this panel with respect to Idaho's parental consent laws. Only this time, the only issue presented is how to apply the U.S. Supreme Court's holding in IOP. In the previous litigation, the panel struck down the State's parental consent law because it lacked a valid medical emergency definition. The panel also refused to sever portions of the definition because it determined that severing would be contrary to Idaho's legislative intent of restricting as many abortions as the State could. The panel went on to acknowledge that even if the previous legislation had a valid medical emergency provision, the legislation would still be invalid because of vagueness, specifically that the judicial bypass indefinite timeframes were insufficient to provide physicians' notice of criminal violations. In response, in 2004, 2005, the Idaho legislature enacted H.B. 351, which revised the medical emergency exception or definition to mirror the Casey's subjective good-faith medical definition. Sotomayor, I think we're all familiar with the background and what the statute contains. Is it Idaho's position that the provisions that Judge Windmill found infirm, that you're not contesting that? That is correct, Your Honor. You're simply arguing that it's possible to slice those, if you will, out of the statute and let it go forward? That is correct, sir. Okay. So the statute would not have a criminal reporting requirement? The statute would still carry a criminal reporting or the statute would still have reporting or criminal provisions, but would not, by severing the portions that the district court specifically addressed as vague and incorrect, it resolves the vagueness issues that the Court had concern. Meaning that you would take out the due diligence language? That is correct. And you would take out the fornication statute problem? The reporting requirement would also be severed. The entire reporting requirement or simply the application to fornication? Your Honor, the entire reporting requirement as per H.B. 351, I believe we did supply Exhibit A, which actually has a --- Well, actually, my brief didn't have an Exhibit A. I'm sorry, Your Honor. There was a reference to an Exhibit A, but no Exhibit A. I apologize. It's actually in the appellant's reply brief, Exhibit A. In our suggested revisions or in terms of severing the provisions, would completely sever out the reporting requirements that a guardian ad litem would have to comply with. So what would--? I'm sorry. Go ahead. Go ahead. So essentially, you'd be left with your basic parental consent plus the emergency provision. Is that essentially the guts of the statute at that point? Well, it would be what would be left would be the parental consent provision plus the exceptions. You would also sever out the post-emergency abortion notification provisions. And that, I believe, once that is severed out, it addresses the district court's concerns with respect to the vagueness as well as the chilling effect. What about mature minor? The mature minor, there's actually already provisions in the main parental consent bypass procedure that provides for exceptions for minors, for mature minors. In general terms, stripped of the provisions that the district court found offending, Idaho would have a parental consent law which would require consent but provide for a judicial bypass, eliminate reporting of fornication and statutory rape, that would allow for post-procedure notification. That's correct. Am I right so far? That's correct, sir. And would contain provisions that would allow for consideration of mature minor. That is correct. My understanding from what you said is that you would sever the entire criminal reporting provision. Well, it would be we would not sever the – and I apologize, Your Honor. The criminal provision will still be there. I don't mean the provision that says that makes it a crime. I mean the provision that requires the reporting of crimes. That is correct. So you would not – you would sever the whole thing? Yes. Yes, ma'am. Well, that statute doesn't – it's not going to end up looking an awful lot like what was passed. Well, respectfully, Your Honor, the statute is about 14 pages. What we're asking, what the State is asking is that almost a page, approximately a page of it be severed to preserve the entirety. But in terms of what – I mean, what is confusing and disturbing here is that at least pieces of this were no mystery, that they were going to be declared unconstitutional, such as the fornication provision, such as pieces of the post-abortion reporting piece. And the legislature nonetheless went ahead and passed this, and essentially is passing the buck to the courts, it seems to me. And the question is, what do we do under those circumstances? Respectfully, Your Honor, I do believe that the legislature did attempt to resolve the issues that the district court and, in fact, this circuit had. Well, let's take the fornication thing. That just wasn't a mystery. I mean, it was flagged in advance. It was mentioned, and it wasn't – although one exception was put in, the other one wasn't. Why would that be? Again, Your Honor, specifically mentioned in the district court case was the district court's concern for statutory rape. And it did have a footnote with respect to fornication. It was mentioned. It was the legislature's understanding and belief, as supplied by opposing counsel's own committee records, that fornication would be included in statutory rape. Obviously, you couldn't have statutory rape without fornication. Except that there's a specific – there's a reference to a specific statutory provision, and this isn't it. I mean, the one for statutory rape and not to the separate provision, that's fornication. Right, Your Honor. And, again, we're not here, or the State is not here, to argue the merits. No, I understand that. But the question is, what – given the fact that there was an easy way for the legislature to do this, for us instead to do it seems like an uncomfortable division of the responsibility. Well, Your Honor, I believe the last time I was here, Judge McKinlan actually stated or commented that it would have been nice to have some legislative intent with respect to the previous legislation. And in this case, we actually do. In Section 6, sub 1 and sub 4 of 351, it contains the legislative thoughts and deliberations as – as per why they provided the reporting requirements as it – as the way that were, and why did they, as far as I'm concerned, revise the post-notification requirements. I don't think that the two requirements are a mirror image of what this Court and the previous – and the district court had addressed previously. Well, does – one of the puzzles to add here is that the statute has, as I understand it, been in two separate State court proceedings with different numbers. So the Lance – what's called Lance as opposed to Wasden. Yes, Your Honor. That judge determined that these provisions or similar provisions before they had been tweaked with were severable. That's correct. What do we make of that? Does that have any influence on the legislative history, on our decision, on your position? What – what does all that mean? Actually, with respect to the legislative history, again, this is – I'm referring to appellant's – or appellee's brief where they actually included the committee notes. Idaho State Senator Davis actually addressed that problem. He noted the issues with respect to the post-medical emergency notification and reporting, and he asked what impact does the severability clause have on the scheme if it will at least keep the concept of live. And, again, this is on page 6 of appellee's brief. Mr. Squires, who happens to be the ACLU attorney in the State of Idaho, answered that the court applies or applied the severability issue to carve up the statute. He actually informed the court that – or the legislature that sometimes the Ninth Circuit actually does apply the severability provisions. This is actually pre-ayote. And – All right. Let me ask you something about ayote. It's a little confusing, because ayote at some point appears to be applying a Federal standard of severability, and at other points is remanding apparently to apply a State standard. And Levitt talks about a State standard. So what are we doing here? Are we applying a Federal or a State standard of severability? It doesn't matter. And I think – I think that's a very good question. And part of me is just – it's a very interesting case, because the ayote does talk about almost acknowledging a Federal standard. But I think what ayote is really saying is that it's – it's not really new Federal law, but it builds upon previous statutes or previous cases that the Supreme Court has decided upon. Jane L., for instance, even Blotty I, where they chose to abstain. In those cases, Your Honor, rather than treating abortion cases as abortion cases, they – it seems to me that they're – they're informing lower courts that you should treat these cases as cases that involve statutes. And indeed, there's a California case that just recently came out. It's Maldonado, and I do have the site, that has a very good analysis with respect to the ayote decision. And in that case, it recognizes the three interrelated principles that ayote delineated. This is a Supreme Court case? No, Your Honor. And because it's a – it's a relatively recent ayote, this is actually a district court case. It's fed sub 40 to 50. Why don't you, after the fact, the Court has a little piece of paper, and provide that to us as well as to counsel. In that case, it actually – they actually applied ayote in – to a First Amendment question. And they focused on the second principle, which is how courts can – you know, courts – acknowledging that the courts must restrain themselves from rewinding the law. But with respect to the second principle, it's – the question should be, can this Court devise a remedy that does not entail quintessentially legislative work? And to answer that question, it really depends upon the background of the constitutional rules at issue. Now, easily, the Court can articulate a remedy. That leads to the next question I have. Let's assume, for the purpose of the question I'm about to ask, that the panel would conclude – this is a hypothetical question – that Judge Winmale was wrong to refuse severability. Do we send it back to him, or do we apply the red pencil? I think, certainly, that is one option. I think for terms of – I called for an A or a B. I'm sorry? You said yes. I think it's up to the Court to decide. Do we do the red pencil here, or do we send it back to Judge Winmale, if that's the panel's conclusion, and say you were wrong to reject severability, apply severability, red pencil this statute? I think this is – certainly, that question, the answer is, it's up to the Court, this panel, to decide. Certainly, you can remand it. The State's preference would be that if you were to go that route, maybe you should certify to the Supreme Court. That way, in terms of judicial economy, you won't see this case again come out the second time. Or this case can decide on its own, like it previously did with respect to Wasden 1. You know, I thought about certification to the Supreme Court. Do you know how many certifications have been from the Ninth Circuit to the Idaho Supreme Court that have been accepted? I believe that – and honestly, I do not know. The answer is I do not know. Zero. So I did think about that. And then I also thought about the practicality of this. You know, we could certify the whole thing and say, you know, what's the answer? But if we didn't do that, one of several other things could happen. Let's say we said it's not severable, okay? Then it would seem it would go back to the legislature, and the legislature could decide whether on its own it wanted to whack off A and B, you know, those two sections, notification and reporting. And then out would come the statute, the basic – what I'll call the basic statute. Right. So that would be the effect. I think that would be a lot more expeditious than waiting to find out the Idaho Supreme Court did or didn't want to accept certification. And, of course, the third option would be if we were to determine severability as appropriate, either this court or the district court would decide where to put in the red lines. And in any event then, presumably, the legislature would then have to make a decision. Does it want to go with the newly redlined statute, or does it want to add back in some form of A or B and prolong this process and have us all meet again? I mean, are there other options that you see? Yes, Your Honor. There is actually another option. Aside from certification, this Court has also in the past abstained from deciding issues that are particularly of State concern. As a matter of fact, we did actually move to the other option. Well, we couldn't do that. I mean, this is a constitutional question underlying all this, and there is no State court litigation going on. You abstain if there's some other litigation going on, but there isn't. Well, respectfully, Your Honor, the Supreme Court actually did abstain in Ballotti 1 when there wasn't even a motion out there to do so. And in that case, it actually sent it back to the State court system. It did send it back to the State court system. This was never in the State court system. And respectfully, Your Honor, I don't believe there's several doctrines. There's the Younger abstention doctrine, abstention doctrine. But they all depend on there being a, well, not all. I mean, I guess Pullman abstention doesn't. But also, both the abstention issue and the certification issue depend on the answer to my question, which is whether this is a State law problem. If it's not a State law problem, i.e., the severability problem, then we certainly don't abstain or certify it. There would be no point to certifying a Federal standard to the Idaho Supreme Court. So it seems to me we come back to that. What is I.O.A.T.? Is it a Federal standard of severability, or do we look to State law? And if we do look to State law, it seems to me that Idaho State law is arguably not the same as what's articulated in I.O.A.T. Again, Your Honor, I don't believe that the State law in Idaho, if anything, is actually stronger with respect to their ability to severance. It doesn't seem to focus on the hypothetical question of what the legislature would have done, whether they would have passed the statute anyway, but rather on some judgment of how integral this provision is to the purpose of the statute as a whole, which isn't quite the same question. Right, Your Honor. And I think what might be helpful with respect to the Court's consideration of Idaho State law would be Vandenberg or Van Valkenburg v. Citizens for Term Limits. And in that case, Your Honor, that's actually cited in our brief, and the Court is familiar with it because it's cited in Wasden 1, that in that case, what happened was the legislature had passed requirements that candidates would comply with the term limits, or had to sign a ballot legend indicating whether or not they would comply with term limits, and then they would put the language, the legend, on the ballots and provide voter registration materials indicating whether a candidate had or did not comply with the term limits. The Supreme Court actually effectuated the severance provision in that and almost severed the majority of that case while keeping or not keeping the term limits. So while keeping the voter registration requirements alive, they severed the portion that required that legend, ballot legend, be included in a ballot material. I know that it just occurred to me that there is yet another alternative if your client, the State of Idaho and its legislature, is serious about wanting to have a parental consent notification law that meets constitutional muster, and the State of Idaho, and that is you could meet with our mediation office and agree upon a statute with your opponents if they were willing, and the legislature could pass it. Has that ever been considered? It was actually. We have discussed with opposing counsel with respect to severability requirements, and I think you should address that question to them as to whether or not they would agree to something like that. But at least standing here where you are now, you don't reject that out of hand. No. No. As a matter of fact, I believe the Attorney General's office has made several attempts to reach across the table and discuss general abortion legislation with opposing counsel. Okay. You're down to about a minute. You want to save it for rebuttal? I just have one more question. Okay. In this whole severability, is there anything in the record that would suggest that the legislature considered passing what I'll call a basic statute and then separately passing add-on provisions that might implement or relate to that statute, but not as the same statute? Your Honor, I don't know whether or not that discussion has been made. I do know that with respect to this time period, that was not considered. We don't have that in our record. Right. And it may be considered in future legislation. Thank you. Thank you. If I can reserve the remainder of my nine seconds for a rebuttal. We'll give you a little bit of time. Thank you, Counselor. Good morning, Your Honors. My name is Louise Mellie, and I'm here on behalf of Applelease Planned Parenthood of Idaho and Dr. Glenn Wyrick. Good morning. Good morning. We're here today with the basic question of severability and following on the decision of the United States Supreme Court, where the Supreme Court set out three interrelated principles, one of which I think is most essentially at stake here, which is the touchstone of any decision about remedy is legislative intent, for the court shouldn't use its remedial power to circumvent the intent of the legislature. And what I think you have before you today is a very unique set of facts that strongly suggest, and I indeed would say counsel, that what the legislature preferred was a parental consent law with more, with some other version of reporting or some other version of post-emergency and that it clearly, as evidenced by its conduct, preferred that to a just a parental consent law. It preferred this to a... That's obvious, but the question really is, because that's what they passed, and you always have a, whenever you have severability, you have a counterfactual problem, i.e., what would they have done if they didn't do what they did. And so if that's the question, we have to consider not what they did, but what they would have done if they knew they couldn't do that. Well, in that sense, I would agree with you. This is not, this is round two, and in that sense, I think that makes this different from what you're pausing and makes this case different from J now. There are five reasons why I think this is true, and five things, I think, point to the fact that the legislature wanted this law and wanted this law. It would prefer no law to this law. The first... Kagan. Wait. Before you do that, what about my problem, which is, is IOT the standard or, it seems to me that the Supreme Court law is very confused about whether we're applying State or Federal law. Levitt says, plainly, we're talking about State law, IOT doesn't seem to mention State law, and what are we doing here, and does it matter? It seems to me both Idaho, Idaho law clearly, well, let me pause for a second. When you look at your decision in Wasden in this case previously, the factors that you considered there weren't very different from those mentioned in the sense that what you said was you try to sever, if possible, and preserve as much of the statute as possible, and you looked at Idaho law, and you looked at Idaho law, which states in its provisions that the unconstitutional, you sever unless that provision is integral or indispensable to the operation of the statute as the legislature intended. Let's suppose that the statute that the Idaho legislature passed had every single one of the provisions Judge Windmill found to be offending in one section. I know it doesn't, but let's just suppose it were right there in Section A or whatever, and that if you just drew a line through it, as far as he was concerned in terms of his findings and conclusions, the statute would otherwise be okay. How is that different than this situation? I know these requirements are kind of scattered, the ones he found problems with. But if they were right there together in one section, and he said, no, you can't have Section A, why wouldn't that be a classic case for severability? There are two different issues. One is, is the language tied up? Is it integral in the sense it's totally embedded in some way that you can't sever? Now, that was an issue in Wasden. Now, there you did figure out words you possibly could strike for purposes of the medical emergency exception, and you had a severability clause that you could strike words. You nonetheless went to look at what the legislature intended. Here, I think this is not a clean slate. I mean, perhaps if that's what happened the first time, if the very first time the Idaho legislature passed its post-emergency parental notification provision, and it passed, it included the reporting provision 14th in the bypass, then I think that would absolutely make sense. But here the issue is, the legislature did that. Judge Williams said, that's unconstitutional, and here are the reasons why. Not only that, you had that, that's my point one of my five. Then for point two, what the Court said was, if what you want is a parental consent law, it's not as if it's hard to do. Does any part of the jurisprudence in this whole area permit us to look to the, quote, evil intent of the legislative body? I don't think that this is. I'm not trying to suggest that this is. Roberts, stated the other way, did they get better or more favorable consideration if we conclude they've acted in good faith? I don't think that this is evil intent. I think when you look at your decision, for example, this circuit's decision in Gonzales, what this Court said was, you had a clear holding of the Supreme Court that you need a health exception for a partial birth abortion ban. You had testimony that it would be unconstitutional, and you did it anyway. It has to be indispensable. You have a right. You have every right in the world to test the constitutional envelope and to try again and to see if this one's right. But it's not as if that's irrelevant, that that's what you're doing. That suggests that you really, really want this, and you really want to see if you can get this. As opposed to the other question, I don't understand why that would seem to me to be an odd, backhanded way of legislative intent. I mean, the other way to look at it would be, they've been told that this was severable in terms of these provisions that we're concerned about now, leaving aside the basic bypass provision, which went up in Washington. They were told, the state was told, well, look, we're going to enjoin it, but it's severable. And so then they come back and they figure, well, we'll tinker with it, leave it in, but now they know it's severable. Why isn't that not ill intent, possibly under Judge Hawkins' hypothetical, but in fact saying, well, we'll try it again, but if it doesn't work, we know it's severable and we can live with that? And why isn't that pretty good intent or evidence that they weren't going to do or die over that provision? I think for two reasons. One is that there was certainly language in the Wasden decision where the court says, we have serious questions about whether how much we engage in rewriting a state law. But even so, we view this language as indispensable to the Idaho legislature's intent. What other reason could there be for it to include language that is unique among the language in the country? For example, let's take specifics in this case. The coverage of the fornication statute appears to have been quite possibly a mistake. Why couldn't we simply say, not sever anything, just say it doesn't apply to fornication statute? Because fornication is one of the issues that Judge Williams mentioned. I understand that. But instead of striking out the criminal reporting provision, as has been suggested, couldn't we simply not apply it to the one very narrow area as to which is unconstitutional? Just don't apply it to that. I think you would then walk into what I'll just call the second interrelated principle of AOT, which is where there are other constitutional questions at issue. I think severing as to fornication only would not solve the issue. What Judge Williams said in his decision was, every minor has to have an opportunity to pursue a confidential bypass without reporting to another government agency. In fact, this end then says, in fact, that this decision would require reporting of every minor and cites several statutes. If you we certainly below argue that there were a host of other statutes included in the reporting that would give rise to other constitutional questions. So you'd create another constitutional question, which was avoided by this. Yes. Yes. And let me ask you, just as a practical matter, whether you would end up in the same place. For example, nobody is suggesting that these provisions are going to be left in, and that will then become the law. One of two things is going to happen. They would get severed, and you'd have what I'll just call the basic law. And the legislature would have to decide what it was going to do. Or we would decide it was integral of some other word under Idaho law combined with the Supreme Court case, and we'd strike the whole thing down, in which case they'd also be back in the legislature doing the same thing. So I'm, you know, as a practical matter, it seems that the basic law would ultimately survive. Do you disagree with that? Without the question. No, I think there's a question. I have a, I think there's a question, for example, about exactly what the fix is. I think that the fix proposed by the State in Exhibit A to the reply brief still leaves unresolved or poses at least one outstanding constitutional question. But you're right. If you were to purge the statute of all the offending provisions, you would have left what we'll call a basic parental consent law. So then, if we didn't do that, but we struck the whole thing down, at least the basic law would come back. And it would just be a question of timing in some respects. It's sort of a question of timing, and it's a question of, you know, separation of powers in some sense. I mean, this goes back to my the legislature passed this once and was told it was unconstitutional. The legislature then had other models if all it wanted was a parental consent law. It could read your decision in Wasden as saying where you pass language that is sort of unique and you do it not just once but twice. That must mean that it's indispensable to your intent. And then you do it again. It is as if the legislature, the legislature is pushing the envelope, and it has a right to do that. But it's then asking you to fix it up. And so that's where the difference lies, I think, in terms of striking the statute in its entirety and leaving it for the legislature versus the legislature. That's what happened with my life tenure. Could you mention So, you could do things like that. Right. I would appreciate hearing what I kind of heard out of the side is that you thought that even if we were to strike portions that the State suggested, there still remains a constitutional problem. Would you address that? Sure. What the State strikes in Exhibit A is the literal, and I'm going to focus on the reporting requirement. The State strikes the language that says that the guardian has to report. What the State has left in are two pieces of what I'll call, that are related to reporting. One is the section that says that the judge must inquire as to whether the minor is sufficiently mature or an abortion is in her best interest. And it also leaves in the provision that says if the minor fails to answer questions that she can be prosecuted. I think this issue hasn't been briefed, but I do think that there's a question under the reasoning of both Judge Williams and of Judge Windmill as to whether that would create a chill. A minor is going in for a bypass. She's there to prove whether or not she's sufficiently mature or an abortion is in her best interest. She has been questioned as to what the nature of her relations are. And even assuming it's confidential, that may be a chill, and I can't conceive of a State interest. It's like Judge Windmill held certain provisions unconstitutional, not those, as I understand it, and you didn't cross the penal, and so aren't we done with that? Oh, that's related to the reporting requirement. I would view that as related to the reporting as part of the same requirement. It's not been up here as part of Judge Windmill's order. Judge Windmill has little subsections. One has to do with mature minors. The other one has to do with abuse. The third one has to do with the criminal reporting. It doesn't seem to have anything to do with this. This is part of the criminal reporting. This was a provision added as part of the criminal reporting. It's not literally in that section. It's not what he found invalid about it, and it's not in the same language, right? He found invalid a requirement that you report and that that would chill, yes. And you're talking about something that isn't reporting to criminal authorities, but rather an inquiry, and he didn't find that unconstitutional. You didn't cross the penal. We're done, no? I would have to go look back more carefully at the papers. We view that as part of the reporting requirement that integrally tied, because that was in part what gave rise to the guardian having understanding of the sexual relations and therefore being required to report. What's your position with respect to the question I asked the State about the possibility of mediating this, going to a mediator sitting down with the statute, attempting to arrive at one of the rest of problem areas and seeing if the Idaho legislature is willing to pass that statute? I would have to confer with my clients on that, that mediation. But one of my questions there is, there's a finding of unconstitutionality. I guess I come back to if what the Idaho legislature ---- They're here before us right now saying they accept what Judge Windmill did, and just as the matter that Judge Verzon referred to may be done, it seems to me those issues are done. They've agreed to that. They're willing to take them out. You say there may be some other difficult areas. We don't know right now, because it's not part of this record, whether they're willing to remedy that. But are you willing to sit down and talk about it? I think the more natural course might be to go down where for that possibility it might be to go back down to the district court to try to figure out if this court were to go in favor of severability to figure out what was severable. That sounds like a boomerang to me. I mean, just as Judge McKeon pointed out, I mean, we've been down and back once, and now go back again. If he says his client wants to his ---- the State of Idaho wants a constitutionally solid, if you will, parental consent notification bill, and that they accept the conclusions of the district court with regard to its infirmities, maybe now is the time to put them to the test. Just a thought. You told me you have to consult with your client. We accept that. I think one question, though, is if that's what the State wanted ---- I apologize. I can't help but go back. If that's what the State wanted, the State had guidance from Judge Williams. The State had notice from you. The State had models all across the country. Have you ever had a difficult client? I might want to plead the Fifth or something, Your Honor, here. Especially when your client is a ---- is a Hydra-headed legislature worth everybody having their own agendas. But that's where ---- but it is the legislature's job to pass constitutional legislation and to bear upon itself that responsibility, as opposed to purely abiding by what it thinks the political judgments are and entrusting to you to fix and rewrite it for them. I mean, that seems ---- Kagan. In terms of moving things along, wouldn't the ---- if we were to strike what the State suggests we strike, leave the core of the statute standing, if the legislature then wanted something else, they could pass something else, and we're more likely to get to the end of this than if we sever the whole statute and you go back to the legislature again. I understand that your clients in some ways would sort of not like to just so not see the end of this. But in terms of appropriate division of responsibility between the courts and the legislature, maybe that makes more sense. In terms of ---- in other words, for us to say this piece is no good, it's gone. You want to ---- anything back like this, you put it back in. Although I do think that the language in Gonzales and the language in Wasden suggest something different, in that what Gonzales says is, and I understand in Gonzales there wasn't a severability clause, but what the language in Gonzales says is you had notice, you made a decision to do this, you made a choice to take this risk, and where you make a choice to take this risk, you certainly have that right, but there is a consequence. Your choice is integral. You think this was as blatant as that? I do. Well, I do in the sense that there was Judge Williams's decision. There was testimony at the ---- in the hearings that pretty much detailed what was wrong with this. And then, you know, even as you had counsel for the State stating that there were some ---- that there was novelty and, therefore, risks with doing the post-emergency notification. These are still relatively fine-cut problems, unlike the Gonzales issue where there was just no health bypass theory at the end. But that suggests two things. I mean, there were some ---- I'll say blatant in this context. There were some blatant ---- there was some blatant guidance of Judge Williams as to what was or was not okay, and there are on the books for the States taking the provisions of the other States. They want to try to see if they can come up with a reporting requirement for a post-emergency notification that works, and they want to push that envelope. And so in that sense, they are more akin to Congress. And in that sense, to just sort of rewrite and leave to people to continue to challenge I think really does shift the balance in a way that feels to me inappropriate as opposed to what we're saying is consistent. Kagan. But if we rewrite your ---- from your client's point of view, you want what you want. It's gone. It's not there. If they have a ---- they're the ones at that point who have the problem. If they want it back in, they have to do something. In some sense, because from the standpoint of a client or from the citizen, the burden should be on the legislature to actually figure out what's constitutional as opposed to leaving for others the task of continually having to sort of make those fixes. And that's particularly true where there was guidance. This is not a clean slate. It's not in any way a clean slate. I just want to ask you a procedural thing that kind of is in the back of my mind. I saw the Williams order, and then I wondered, I wonder why that isn't law of the case, because it was a severable provisions. Then I realized, you know, you go to legislature, you come back, and there's a new case number. Is that correct? There is technically a new case number. Has this been considered a single case all along? My memory is it was not. We said it was a related case, and we wound up it was a separate ---- it was treated as a separate case this time around. Do you view Judge Williams' view as the severability to be the law of the case, at least at the lower level? No. But even if it were the same case, I would respectfully submit that that was, I'll call it round one, and this is more akin to Gonzales in the sense where the result is different. That was then, this is now. I'm sorry? That was then, this is now. It's a different statute. It may be revised. It's a different statute, but it's also different in terms of, if the question is what would the legislature have wanted, the first time it's much more ambiguous that these provisions are in fact a separate case. Isn't the severability clause different now? The severability clause is different. Now, the severability clause is less precise or less ---- We're on a diet. Thank you for your argument. Thank you. I'll give you a minute or so if you feel there's something you're just dying to tell us that we haven't plowed over. I do. I have one question. So come on up. Well, what is the significance of the fact that the severability clause seems weaker now than it was before? I don't think that there is significance. I don't think there is a magic ---- there are any magic words with respect to the constitution. But they changed it. They must have changed it for a reason. And I don't know what the reason was. I do know that the legislation that was passed with the severability clause as is specifies the specific intent of the legislature to keep provisions severable. I don't think that Jane L. I don't think that ---- But the other one was certainly a stronger severability clause. It is. It is, certainly. And ---- So if anything, this indicates that they're less interested in us severing. I don't ---- respectfully, I disagree with just because in this ---- for instance, in Gonzales, for instance, maybe not this case. Maybe not the Gonzales case that this ---- the Ninth Circuit had dealt with. But the Gonzales case that the Second Circuit had dealt with, it's national abortion v. Gonzales, in that case, there wasn't even a severability provision. And yet, the Second Circuit still effectuated a considerable ---- I guess I have a fixation here. We're not going back to this question, is this a State law or a Federal law. But if it's State law, if we're supposed to look at the legislature's specific intent with regard to severability as opposed to some overweening Federal standard, the fact that they changed it and made it weaker seems to have some significance. And again, respectfully, I don't think that just because the language is slimmer than the original language means that it's less of an intent to sever. The language says what it says. With your original question about what IOT means, is it State or Federal law, I'd like to ---- my interpretation of it, and believe me, I might be wrong, but I feel that IOT is actually the Supreme Court is providing lower courts with direction when dealing with severability clauses in general. And I think the concern that they were addressing was that in abortion situations, it's a very ---- it's undeniably emotional for everyone involved. And that if we were to take that out of the context, take abortion out of the context, apply the intent of the State with respect to severability in instances such as commercial and noncommercial speech, in instances such as whether or not, you know, a legislation or things in the ballot should be in the ballot, I think those ---- I think the Court is letting lower courts know that, you know, we should really look at these provisions as statutes, not as ---- I mean, certainly as abortion cases, but kind of look at them as they did in Jane L. in the summary ---- in their summary reversal. That, you know, let's take a look at the legislative intent. Well, but, you see, what's interesting is that you mentioned the emotional qualities as areas of law, and the kind of behavior we have here in the legislature reflects that. In other words, it would be very unusual in a commercial ---- with a commercial statute for the court to say, you know, you can't do this, and then for the legislature to go back to the legislature and for them, you know, at worst, to simply repeat it anyway, or if you put a better light on it, at least to skirt it as closely as they could. And that's the problem we have. It's because this is not a normal area of law that this is happening at all. It wouldn't happen. Respectfully, I submit that, I mean, if we take it out of the abortion context, if we say the States wanted to pass immigration reform, protecting discrimination from immigrants, and portions of that provision is unconstitutional. Are we going to strike down the entire provision? I don't think so. And we understand your point. Right. Our questions have taken you way over your time, and it's a bit of repetition from the early argument. Thank you both for your argument. It's a very interesting and difficult case. We appreciate your arguments, and the tenor and the approach to the case is very helpful. It was an honor. Thank you very much. The case, just argued, stands submitted for decision, and we stand adjourned.
judges: Hawkins, McKeown, Berzon